UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 3:24-cv-12281-KAR

| | |
|---|---|
| RYAN OLSZTA, *Plaintiff.* | ) ) ) |
| v. | ) ) |
| TOWN OF BRIMFIELD, SUZANNE COLLINS, HAROLD LEAMING, MICHAEL MILLER, GEORGE ADAMS, And CHIEF WILLIAM J. BEAUDRY *Defendants.* | ) ) ) ) ) ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

NOW COMES the Plaintiff in the above captioned matter, who respectfully requests this Honorable Court to reject the Defendants' Motion to Dismiss the Complaint. For reasons stated therefrom, the Plaintiff's contend that the Defendants' actions, as shown through the facts alleged in the Complaint and through evidence which will be revealed through discovery, were malicious, deceitful, and targeted against him. For reasons stated thereof, the Plaintiff contends that the Defendants' have met their burden to have the counts alleged against them dismissed.

## STANDARD OF REVIEW

For the Complainants' claims to survive a Motion to Dismiss, the Complaint must "contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Nevertheless, to survive a Motion to Dismiss does need detailed facts. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). It need only plead facts which a Court could reasonably infer that the Defendant is liable

for the alleged illegalities. *Ashcroft v. Iqbal,* Supra at 678. Therefore, a Complaint should only be dismissed where the Plaintiffs appears to be unable to prove any set of facts to prove his claims which would entitle them to relief. *Iannacchino v. Ford Motor Co.,* 451 Mass. 623, 636 (2008).

## ARGUMENT

### I. THE PLAINTIFF'S SERVICE WAS TIMELY

Mass. R. Civ. P. 4(j) allows for a matter to continue if the Defendants were not served within the ninety (90) day deadline where the Plaintiff is able to show "good cause" for why service was not effectuated by the deadline. *Mass. R. Civ. P. 4(j)*. The burden lies with the Plaintiff to demonstrate the "good cause" for his failure. *Commissioner of Revenue v. Carrigan,* 45 Mass. App. Ct. 309, 311 (1998). 'Good cause' has been defined as "a stringent standard requiring diligen[t]" albeit unsuccessful effort to complete service within the period prescribed by the rule." *Shuman v. Stanley Works*, 30 Mass. App. Ct. 951, 953 (1991) quoting *Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 509 (E.D. La. 1985). Nevertheless, this rule is not meant to be strictly construed due to the liberal time extension allowances often granted. *Commissioner*, Supra at 312 quoting *Burks v. Griffith*, 100 F.R.D. 491, 492 (N.D.N.Y. 1984). The inquiry is focused on the "diligence" and "reasonableness" of the Plaintiff's Counsel's efforts to properly effectuate service. *Shuman*, Supra at 953.

The Plaintiff initiated this current action in Hampden Superior Court on April 16, 2024. Pursuant the Massachusetts Rules of Civil Procedure, a Plaintiff has ninety (90) days from the date of filing to properly effectuate timely service upon the Defendant(s). *Mass. R. Civ. P. 5*. Given the April 16 filing date, the Plaintiff's deadline to satisfy Mass. R. Civ. P. 5 was July 15, 2024. On July 18, 2024, the Plaintiff filed a Motion to Extend the deadline by thirty (30), which

was administratively granted on July 19, 2024. The new deadline under this ruling was extended to August 18, 2024.

Upon receiving the requisite summonses, the Plaintiff mailed out service to the Hampden County Sheriff on August 5, 2024. The Defendants would not be served by the sheriff until a fortnight later on August 20, 2024. The Plaintiff subsequently filed the return of service on August 28, 2024 immediately after receiving it in the mail. At all times relevant the Plaintiff acted diligently in ensuring that he met the Rule 5 deadline(s), and effectuated service timely through an authorized constable. If not for the constable's delay, he would have effectuated service before the August 18th deadline..

## II.   *RAHIMI* DOES NOT APPLY AS THE HPO WAS OVERTURNED

The Plaintiff agrees with the Defendant on their analysis of *Heller* and *Rahimi*, however he contends that those cases are misapplied to this fact pattern. Per the Complaint and the Defendants' Motion to Dismiss, the Plaintiff's firearms were surrendered and his License to Carry ("LTC") was suspended pursuant an Extreme Risk Prevention Order (ERPO) obtained by Chief Beaudry and a later Harassment Prevention Order ("HPO") obtained by Defendant Collins. The basis for the HPO included factual allegations that the Plaintiff "flipped off" Collins while in a public setting on two different occasions. .

Chief Beaudry, per his testimony to the Plaintiff, acted under the authority of the Brimfield's Board of Selectmen to reach out to his uncle to obtain sufficient evidence to take away his firearms. At the subsequent trial hearing, the Plaintiff's uncle testified that Chief Beaudry had reached out to him, not the inverse as the uncle's note suggested. Both the HPO and ERPO were subsequently overturned and dismissed for lacking a factual basis.

The Court further clarified that pursuant to the First Amendment, the Plaintiff had a constitutional right to "flip off" the Defendant, and thus could serve no basis for a HPO. Another aspect of the HPO was hearsay testimony allegedly provided by the Plaintiff's uncle, who alleged, in an unauthenticated writing, that the Plaintiff was a danger to the public due to alleged mental health and thus should not be allowed to carry a firearm (see attached as **Exhibit A**). Defendant Beaudry obtained this alleged statement after he had reached out to the Plaintiff's uncle to obtain evidence to formulate a "red flag" law case against him. Hence, the Plaintiff's firearms were unlawfully seized.

The Defendants rely principally on the Supreme Court's decision in *Rahimi*, which clarified that it is constitutional for a private citizen to surrender his firearms where he is found to be "a credible threat to the physical safety of another." *United States v. Rahimi*, 144 S. Ct. 1889, 1991 (2024). In that matter, the Court reasonably found that the Respondent/Defendant posed a credible threat to the alleged victim due to a series of abusive incidents, one being where he either fired a shot at her or a witness who saw him abuse her. *Id* at 1889. However, the facts in this matter do not support the allegation that the Plaintiff posed a "credible threat to the physical safety of another." Any allegation against the Plaintiff was later shown to lack any merit or was protected by the US Constitution. Hence, he could not have been considered a "credible threat" and could not satisfy the *Rahimi* standard.

III. <u>PLAINTIFF LAWFULLY REMOVED THEIR COMPLAINT WITH THE MCAD TO SUPERIOR COURT PURSUANT *M.G.L. c. 151B*</u>

M.G.L. c. 151B, §9 states in part that any claimant filing under c. 151B "may, at the expiration of ninety days after the filing of a complaint with the [MCAD].....but no later than three years after the alleged unlawful practice occurred, bring a civil action for damages or

injunctive relief or both in the superior or probate court." *M.G.L. c. 151B, §9*. The statute is to be "construed liberally." *Id*. The Plaintiff initially filed this action with the MCAD on August 18, 2021 for discriminatory actions having occurred on June 28, 2021. The Plaintiff notified the MCAD of its intent to remove this matter to Superior Court, which he subsequently did on April 16, 2024, within the three year statute of limitations. Therefore, the Plaintiff's claims under M.G.L. c. 151B, §9 are viable and should not be dismissed.

### IV. PLAINTIFF'S WHISTLEBLOWER CLAIM IS NOT TIME BARRED AND THUS SHOULD SURVIVE

The Plaintiff initiated his MCAD action on August 18, 2021 via a Complaint which included the claims raised pursuant M.G.L. c.149, §185. The statute of limitations for a "Whistleblower act claim" is two years from the date of the alleged injury. M.G.L. c.149, §185(d). The MCAD has not made a final judgment regarding the Plaintiff's claim under this statute. Given that the initial action where this claim was raised was within the statute of limitations, it should not be dismissed under the Defendants' theory.

### V. THE DEFENDANTS' FAILURE TO NOTIFY THE PLAINTIFF OF THE COMPLAINTS IN HIS PERSONNEL FILE IS AGAINST PUBLIC POLICY

The Plaintiff concedes that M.G.L. c.149, §52C does not contain any express right of action. See generally *M.G.L. c.149, §52C*. However, the Supreme Judicial Court ("SJC") of Massachusetts has recognized instances where an action can be brought under M.G.L. c.149, §52C, where it violates public policy concerns. See *Meehan v. Medical Information Technology, Inc.*, 488 Mass. 730, 735 (2021) ("We conclude that the statutory right of rebuttal provided in G. L. c. 149, § 52C, is a legally guaranteed right of employment, and therefore, termination from employment for the exercise of this legally guaranteed right fits within the first public policy

exception to employment at will defined by our case law"). *Meehan* presents a somewhat analogous case to reference.

The SJC found that M.G.L. c.149, §52C highlights a public policy concern related to at-will employees finding future employment after their termination, particularly with respect to the ability to rebut any charges against the employee. *Id* at 736. A future employer should have the ability to make a rational informed decision when considering hiring the employee in question. *Id*. In turn, this protects the employee's ability to seek future employment given that their personnel record, and potential rebuttal(s) is available to a prospective new employer. *Id*.

While the facts in this matter do differ from *Meehan*, the core issue is nonetheless the same. The Plaintiff was allegedly terminated pursuant various complaints filed against him (many of which were filed after his termination). To date, he has not been able to view the various complaints against him. Since he was not aware of the Complaints nor their allegations, he could not adequately rebut them. This lack of transparency has prejudiced him in his job search for another police officer/patrolman position in the area. Hence, the Defendants' argument that since there is no express right of action therefore none exists fails. Their failure to adhere to their statutory requirements has unduly prejudiced the Plaintiff, and thus has caused injury to him for which he is entitled to seek remedy.

## VI. THE PLAINTIFF'S HARASSMENT CLAIM IS NOT SHIELDED BY M.G.L. c.231, §59H

M.G.L. c.231, §59H, the "Anti-SLAPP" statute, allows for the dismissal of any civil claim stemming from constitutionally protected "petitioning activities." *M.G.L. c.231, §59H*. Pursuant this statute, a judge is allowed to grant a "special motion to dismiss" unless "(1) the [Defendant's] exercise of its right to petition was devoid of any reasonable factual support or any

arguable basis in law, and (2) the [Defendan's] acts caused actual injury to the [Plaintiff]." *Id*. The Plaintiff fully concedes that Collins's actions fall under the class of activity protected by the Anti-SLAAP statute. However, she is still not entitled to a special dismissal because these claims meet the requirements for the carved out exception.

### A. COLLINS'S "PETITIONING ACTIVITY" HAD NO FACTUAL BASIS

A Defendant seeking a special dismissal under M.G.L. c.231, §59H must demonstrate that the claims against her are predicated on her petitioning activities, and lack any other basis. *Bristol Asphalt, Co. v. Rochester Bituminous Prod., Inc.*, 493 Mass. 539, 555 (2024). The petitioning activity must further involve a statement made by the [defendant] concerning the [Plaintiff]. *Hanamura, v. Newton*, 104 Mass. App. Ct. 1108 at 4* (2024). To reiterate, the Plaintiff concedes that Collins's activity falls under the statutory definition of "petitioning activities" and thus is eligible for protection under Anti-SLAPP. However, the HPO in question was summarily overturned and dismissed citing a lack of factual basis. The alleged factual basis related to the Plaintiff's First Amendment protected exercise of speech, notably his alleged giving Collins the middle finger while in public. Thus, the Plaintiff has met the first prong of M.G.L. c.231, §59H's exception.

### B. COLLINS'S "PETITIONING ACTIVITY" CAUSED ACTUAL INJURY

The second prong for M.G.L. c.231, §59H's exception requires the Plaintiff to show that the Defendant's "petitioning activity" caused him actual injury. *M.G.L. c.231, §59H*. Collins's factually devoid HPO, in part, led to the Plaintiff having to surrender his LTC and firearms. Further, Collins informed the local media about the HPO to further publicize his alleged "illegal" actions. In their request for a special motion to dismiss, the Defendants do not address the additional actions taken by Collins in an effort to harass and defame the Plaintiff. The Plaintiff

contends that the HPO only serves a part of the overall claim against Ms. Collins for Harassment, and thus should not be limited in either case to an analysis of whether this claim is viable solely on the one alleged action. In any event however, the HPO is demonstrably false factually, as was determined by Palmer District Court on its appeal and led to the Plaintiff sustaining actual damages because of its original issuance.

### VII.     THE PLAINTIFF PLEADS A VIABLE CLAIM OF DEFAMATION

A defamation case has three elements that Plaintiff must satisfy: 1) the Defendant was responsible for publishing a statement concerning the Plaintiff, 2) the statement was capable of causing damage to the Plaintiff's reputation in the community, and 3) the statement caused actual economic loss (or is actionable without proof thereof. *Kilnapp Enterprises, Inc. v. Massachusetts State Automobile Dealers Association*, 89 Mass. App. Ct. 212, 217-18 (2016) citing *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004).

For a statement to be actionable for defamation, it must be a statement of fact rather than opinion. *Scholz v. Delp*, 473 Mass. 242, 249-50 (2015) citing *King v. Globe Newspaper Co.*, 400 Mass. 705, 708 (1987) and *National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 227 (1979). Whether a statement is a "fact" or "opinion" is a question of law. *Id* at 250. A statement of "fact" is one that can be objectively verified or falsified. *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 127 (1st Cir. 1997*), quoting Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993). A false statement is one where the statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991).

The facts clearly stipulate that following his termination, the Select Board compiled various complaints against the Plaintiff. Each of these were time stamped after his termination. They were also further investigated and found to be unsubstantiated claims. Nevertheless, the allegations contained in these complaints were given to the local media, who published articles which were publicly distributed. The Plaintiff has since been unable to obtain work in a law enforcement capacity in the area because of the allegations raised publicly through these articles.

Ms. Collins, in particular, has coached a fellow private citizen to bring suit against the Plaintiff based on the unsubstantiated allegations in these complaints. She had also attempted to have him fired by emailing his business (under the assumption that he was just an employee) that he was a "corrupt and dangerous person" who has "harassed and stalked community members" and "should not be around the public, never mind children." While the Plaintiff does not allege that this particular instance had influenced or had been viewed by anyone else, it nonetheless points to a motive and series of behaviors to ruin his reputation and cause the Plaintiff economic injury.

VIII.  THE PLAINTIFF'S COMPLAINT STATES A VIABLE CLAIM FOR INTENTIONAL
        INFLICTION OF EMOTIONAL DISTRESS

A Plaintiff's claim will succeed where they can show that the Defendant "(1) intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community' . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress . . .; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'" *Parker v. Chief Justice for Admin. & Mgmt. of the Trial Court,*

67 Mass. App. Ct. 174, 180 (2006) quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976).

The Defendant's alleged conduct is "extreme and outrageous" where it "go[es] beyond all possible bounds of decency, [is] regarded as atrocious, and utterly intolerable in a civilized community." *George v. Jordan Marsh Co.*, 359 Mass. 244, 254 (1971) quoting *Restatement 2d: Torts, § 46*. Via the Second Restatement, *George v. Marsh* further clarifies that there is a knowledge factor in this analysis. See *George v. Jordan Marsh Co., 359 Mass. 244, 254* (1971) quoting *Restatement 2d: Torts, § 46(f)* ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know").

While the Massachusetts Tort Claims Act ("MTCA") precludes liability being imposed upon public employees acting in their official capacity (*M.G.L. c. 258, §10(c)*), liability can nonetheless be impugned against the Defendants in their individual capacity. *Parker v. Chief Justice for Admin. & Mgmt. of the Trial Court*, 67 Mass. App. Ct. 174, 181 (2006). In this case, particularly against Defendant's Collins, Miller and Leaming, there is evidence that all three acted to cause the Plaintiff distress. Collins and Miller, as interested parties in the Brimfield Flea Market, worked to tarnish the Plaintiff's reputation thereby removing him from his employment as a Brimfield patrolman and effectively preventing him from gaining employment in another jurisdiction. Additionally, Collins and Beaudry, worked to procedurally abuse the Plaintiff by having an HPO and ERPO issued against him without a factual basis. Leaming, similarly, targeted the Plaintiff over his sexual preferences. Finally, Collins's actions denote animus against

the Plaintiff in her consistent deliberate attempts to cause him distress via damaging his reputation.

## IX. PLAINTIFF'S COMPLAINT STATES A VIABLE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Any claim brought under M.G.L. c.258, §M.G.L. c.258, §1 requires that a presentment letter be offered to the Defendant public employer within two years of the alleged injury. *M.G.L. c.258, §§1-2*. The Plaintiff does concede that no formal presentment was sent to the Defendant Town. However, there is an "actual notice" exception to this rule. See *Coren-Hall v. Massachusetts Bay Transportation Authority*, 91 Mass. App. Ct. 77, 79 (2017). "The presentment requirement will be deemed fulfilled if the plaintiff can show that, despite defective presentment, the designated executive officer had actual notice of the written claim." *Bellanti v. Boston Pub. Health Commn.*, 70 Mass. App. Ct. 401, 407 (2007), citing *Lopez v. Lynn Hous. Authy.*, 440 Mass. 1029, 1030 (2003). This exception adheres to the statutory requirement that the executive, not a subordinate, receive actual timely notice of the alleged claims against the public employer. *Coren Hall,* Supra at 80 citing *Martin v. Commonwealth*, 53 Mass. App. Ct. 526, 529 (2002).

The Town's executive was properly notified via the MCAD Complaint filed against them, which in part, included the claims for Negligent Infliction of Emotional Distress. Hence the executive would have been notified of the factual and legal allegations levied against them by the Plaintiff. Further, with respect to the individual claims, the court should refer to Subsection VIII of this Opposition. The Complaint clearly demonstrates actions taken by Collins, Miller, Beaudry and Leaming which were intended to cause the Plaintiff distress. The Defendant can argue that no "reasonable person" would be distressed by their respective actions, however that decision is most appropriate to be determined through litigation rather than a Motion to Dismiss.

X.  <u>CHIEF BEAUDRY IS NOT ENTITLED TO QUALIFIED IMMUNITY DUE TO HAVING VIOLATED THE PLAINTIFF'S CONSTITUTIONAL RIGHTS</u>

The doctrine of qualified immunity attaches to civil suits against officers, who's conduct does not clearly violate the established constitutional or statutory rights that a reasonable person would be aware of. *City of Tahlequah v. Bond,* 595 U.S. 9, 12 (2021); *White v. Pauly*, 580 U.S. 73, 78 (2017) quoting *Mullenix v. Luna*, 577 U. S. 7, 11 (2015). A "clearly established right" in this context, is any right that a reasonable officer would understand that their conduct violates. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Thus, the Court should use a two part test to analyze whether the Defendant is shielded via "qualified immunity." "(1) Whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Mass. ex rel. Powell v. Holmes*, 546 F. Supp. 3d 58, 69 (2021) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

With regards to case law precedent, the Courts do not require a pinpoint factually analogous case, but that it established that the alleged right is beyond debate. *Mullenix v. Luna*, 577 U.S. at 11 quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011). Thus "qualified immunity" generally shields potential liable officers except for those who are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

*United States v. Rahimi* is the latest Supreme Court decision which weighs into the limitations on a private citizen's Second Amendment rights. See Generally *United States v. Rahimi*, 144 S. Ct. 1889 (2024). The Court upheld the federal restraining order statute's (18 U. S. C. §922(g)(8)) ability to disarm a respondent who surrendered his firearms pursuant a restraining

order. *Id* at 1898. The US Supreme Court held that it is constitutional to disarm a private citizen where it has been shown that he is a clear threat to commit physical harm. *Id* at 1901.

To reiterate, the Plaintiff surrendered his firearms and LTC pursuant to a HPO and ERPO filed by Collins and Beaudry respectively. Both orders were summarily overturned for lacking a factual basis for their existence, with the HPO being overturned for being violative of the Plaintiff's First Amendment rights. With respect to the ERPO, Beaudry leveraged a hearsay letter allegedly written by the Plaintiff's uncle as the basis for obtaining a "red flag" order to remove his firearms. The letter claims that the Plaintiff is mentally ill to the point that he is a danger to himself and the general public, and thus should not be allowed to own or wield firearms. The Plaintiff's uncle is not a licensed psychologist or psychiatrist, nor has he ever conducted a thorough mental examination of the Plaintiff such that he could make such conclusions. Further, given it is hearsay, the letter itself requires authentication which it never received.

Neither charge or its consequence indicates that the Plaintiff posed any risk of physical harm to Collins or any other private citizen. Nonetheless, Beaudry took it upon himself to initiate an investigation to obtain an ERPO pursuant to an order given to him by the Brimfield Board of Selectmen. Both Beadry's statements to the Plaintiff, and the Plaintiff's uncle's testimony under oath acknowledge this fact. The facts also show that Beaudry was aware of the Plaintiff's previous abuse at his uncle's hands. The Plaintiff's Second Amendment rights were thus impeded on when his LTC was seized pursuant this ERPO. These actions are outside the scope of his duties, unbecoming of the position. His actions resulted in the Plaintiff being deprived of a definitive constitutional right, thus Beaudry's actions are not worthy of qualified immunity entitlement.

## CONCLUSION

WHEREFORE, the Plaintiff humbly and respectfully requests that this Honorable Court reject the Defendants' Motion to Dismiss for the aforementioned reasons.

Respectfully submitted,
RYAN OLSZTA
Plaintiff
Through their attorney,

/s/ Andrew J. Couture, Esq.
Andrew J. Couture, Esq. BBO#: 671193
The Law Office of Andrew J. Couture
77 Merriam Avenue
Leominster, MA, 01453
(978) 502-0221
attycouture@gmail.com

DATED: October 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on October 31, 2024.

/s/ Andrew J. Couture, Esq.
Andrew J. Couture, Esq.

# EXHIBIT A

| SUMMONS TO RESPONDENT<br>G.L. c. 140, § 131S | DOCKET NO. (for court use only)<br>2343FS0002 | TRIAL COURT OF<br>MASSACHUSETTS |
|---|---|---|
| RESPONDENT'S NAME AND ADDRESS<br>Ryan E. Olszta<br>34 Wales Rd<br>Brimfield, Ma. 01010 | COURT NAME AND ADDRESS<br>Palmer District Court<br>235 Sykes St. STE 3<br>Palmer, Ma. 01069 | DATE OF COURT HEARING<br>11/17/23<br><br>TIME OF COURT HEARING<br>9:00am |

## SUMMONS TO RESPONDENT
### for Hearing on Petition for Extreme Risk Protection Order
### G.L. c. 140, §131S

A petition has been filed with this court seeking an order that you surrender any firearm identification card, license to carry firearms, firearms, shotguns, machine guns, stun guns and ammunition in your control, ownership or possession to your local licensing authority. The issuance of such an order would prohibit you from possessing or accessing any of such items while the order is in effect.

A judge will conduct a Hearing on the Petition at this court on the date and time shown above.

**You are hereby summoned to appear** before this Court at the date and time shown above if you wish to be heard on whether the Court should issue the requested order.

At the hearing, you may offer witnesses or other evidence on your behalf and you may be heard on whether the Court should issue the requested Order. If you wish, you may retain counsel to represent you at the hearing.

**If you do not appear at the hearing, the court may issue the requested order without hearing from you.**

Whether or not you appear at the hearing, if the Court issues an Order requiring you to surrender the listed items and prohibiting your access to them, **any violation of that order is a criminal offense**, punishable by imprisonment or fine or both.

| TESTE OF FIRST JUSTICE<br>WITNESS: | DATE ISSUED<br>11-8-23 | SIGNATURE OF CLERK MAGISTRATE/ASST CLERK MAGISTRATE<br>X _[signature]_ |
|---|---|---|

### NOTICE TO LAW ENFORCEMENT

You are to serve a copy of this summons, along with a copy of the petition, on the Respondent in-hand and make your return of service below. Service is to be made at least 7 days prior to the hearing date indicated on the summons.

The Petitioner and Respondent confidential information forms, if filed with the court, accompany this Summons. These forms are for law enforcement information only, **not to be served** on the Respondent.

If unable to serve in-hand, a return is still required noting lack of service. If, after a hearing, the court determines that personal service is not possible, the court may authorize service be made by some other identified means reasonably calculated to reach the respondent.

### OFFICER'S RETURN OF SERVICE

☐ I certify that on this date I served this Summons and a copy of the Petition on the Respondent in hand.

☐ I was unable to serve the Respondent in hand because _____

| PRINTED NAME OF OFFICER MAKING SERVICE | TITLE/RANK | POLICE DEPARTMENT |
|---|---|---|
| SIGNATURE OF OFFICER MAKING SERVICE | DATE AND TIME OF SERVICE | |

FS-9 (Rev. 8.13.18)

Anthony Napoleon Miner 11/8/2023
14C Penobscott Terrace
Belfast ME 04915          207 323 0705

Ryan and his siblings had a pretty screwed up upbringing with my sister Darleen Olzta.

Six children Three fathers and multiple abusive physically, emotionally and sexually.

The kids witnessed abuse not only to my sister but abuse by my sister.

By this I mean manipulating people to cover her own infidelity or to protect her abusive relationship by deflecting guilt onto others

They were basiclly taught to help people out of the kindness of there heart untill you get what you want.

If they want something and someone says no you take it by manipulation.

Ryan witnessed his sister being abused and his mother doing nothing except leave her alone with suspected abuser (Maroutty case)   Southbridge PD Invest

From when Ryan was a cadet he would abuse his power by Tazing his freinds, Making fake warrants and raiding peoples houses.

*anthny Miner*

①

On thursday 11/8/23 my son Anthony Miner JR and I traveled to the police department in Brimfield to seek a protection order against my nephew Ryan E Olszta. We came down from our home in Maine because we are concerned that Ryan posseses firearms.
These are the following Reasons:

1) After my father passed found out my sibblings were abused and I beleive as a result of this the abuse continued onto Ryan emotionally.

2) Ryan's mother has 6 kids with 3 fathers and multipule abusive rebtions inbetween which the kids were caught up in.

3) Ryan began threatening people when he was a cadet tazing his freinds serving fake warrants and abusing his authourity

4) He used his sexuality against the military after being assaulted and was put in protection custody suicide watch in NY New York

Anthony Miner

(3)

These were things he told me personly.

He put a gun to his mother head and threatend to shoot her.

One of his role model is Napoleon Suprenaunt who has same manipulative patters as his mother. He is our uncle who pretend to protect and help family but somehow everybody but him looses. He help my brother who had issues with little girls my uncles solution was to help him purchase 2 properties to open day cares. Well, my brothers in prison now. Richard Mined in South Carolina for Child molestation.

I could go on but theres too much the short Ryans image and what people think of him means everything if someone threatens that someone is going to get hurt Physicly or emotional These kids acould manipulate people at 12 better than there mother at 50 the kids were raised by example and none of it was good.

Anthony Mune

②

5) He threatened his mother by putting a gun to her head and shooting her because she wouldn't due what he wanted.

6) Ryan and his siblings were part of and witness to physical, emotional, and sexual abuse

7) He also has military training police training and familitary of guns. All the same training and hospilization as the shooter in the recent Maine mass shooting

8) The reason for this application is we are worried for Ryans saftey and the safty of others and beleive he needs emotional help not a gun.
Please consider the protoctive order due to his mental health issues in the past for the saftey of others

Anthony Miner

④