UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN OLSZTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:24-cv-12281-KAR |
| ) | |
| TOWN OF BRIMFIELD, SUZANNE ) | |
| COLLINS, HAROLD LEAMING, ) | |
| MICHAEL MILLER, GEORGE ADAMS, ) | |
| and CHIEF WILLIAM J. BEADRY, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 10)

ROBERTSON, U.S.M.J.

Ryan Olszta ("Plaintiff") brings this case against the Town of Brimfield ("the Town" or "Brimfield"), Brimfield Police Chief William J. Beaudry ("Chief Beaudry"), Select Board Chair Suzanne Collins ("Collins"), Select Board members Harold Leaming ("Leaming"), Michael Miller ("Miller"), and George Adams ("Adams") (collectively, "Defendants"). Plaintiff, a former police officer in the Town, is suing various of the Defendants for unlawful termination of his employment on the basis of his sexual orientation in violation of Mass. Gen. Laws ch. 151B, § 4 (Count I against the Town, Collins, and Leaming), retaliation in violation of the Whistleblower Protection Act, Mass. Gen. Laws ch. 149, § 185 (Count II against the Town), failure to notify him of negative additions to his personnel file in violation of Mass. Gen. Laws ch. 149, § 52C (Count III against the Town), harassment (Count IV against Collins), violation of his rights under the Second Amendment to the United States Constitution (Count V against

1

Brimfield and Chief Beaudry), defamation (Count VI against all Defendants), and intentional and negligent infliction of emotional distress (Counts VII and VIII against all Defendants). Defendants move to dismiss Plaintiff's complaint in its entirety (Dkt. No. 10). The parties have consented to this court's jurisdiction (Dkt. No. 17). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, Defendants' motion to dismiss is GRANTED WITHOUT PREJUDICE based on insufficient service of process.

I.   BACKGROUND

   A.   Allegations in the Complaint

When Plaintiff began working as a Brimfield police officer in December 2015, he was the only openly gay officer on the force (Dkt. No. 1-2 at ¶¶ 10-11). In June 2018, Plaintiff was elected to the Town's Select Board (*id*. at ¶ 12). Shortly after his election, fellow Board member Leaming told Plaintiff to keep his sexual orientation to himself, and later Board Chair Collins expressed to Plaintiff her disapproval of his missing meetings to visit his then-boyfriend in Germany (*id*. at ¶¶ 15-16). Plaintiff advised then-Chief of Police Charles Kuss ("Kuss") about the remarks Collins had made about his homosexuality (*id*. at ¶ 17). Plaintiff also filed a complaint with Kuss against then-Lieutenant Beaudry for telling Plaintiff that if he wanted to keep busy, he "could go to the courthouse and suck off the guards there" (*id*. at ¶ 33).

At some point during his tenure as an officer, Plaintiff became aware of corruption allegations related to the Brimfield Flea Market, which brings in the bulk of the Town's income and tax revenue (*id*. at ¶¶ 18-19). Plaintiff began to investigate a possible corruption scheme between the Flea Market and the Select Board (*id*. at ¶¶ 18, 20). Collins and Board member Kelly are both Flea Market owners and sit on the Select Board subcommittee dedicated to the Flea Market (*id*. at ¶ 21). Miller, the Town Moderator, is married to an owner of the Green

Acres Flea Market (*id*. at ¶ 22). Kelly and fellow Board member Leaming were both members of the Flea Market Promotor's Association, which organization endorsed them in their campaigns for membership on the Select Board (*id*. at ¶ 23).

During a 2021 Town Hall meeting, when Plaintiff referenced a "good ole boys club," Collins did not take kindly to the comment (*id*. at ¶ 24). She told Plaintiff to "shut [his] fucking mouth," and that he did not know what he was talking about (*id*. at ¶ 24). At around the same time, Miller filed a complaint against Plaintiff during an open meeting, with Collins' knowledge and acquiescence and having coordinated with Collins, Kelly, and Leaming in doing so (*id*. at ¶¶ 25-26). Adams, in coordination with Collins, presented further allegations against Plaintiff during another open meeting (*id*. at ¶ 27). The complaint prompted an investigation, but the allegations were unsubstantiated (*id*. at ¶ 29). Nevertheless, Miller stated on the Brimfield Community page that he stood by the accusations (*id*. at ¶ 30). In addition, the complaints were placed in Plaintiff's personnel file without him receiving lawful notice (*id*. at ¶ 28). The local media obtained the file and published articles about the complaints, which characterized Plaintiff as an irresponsible and dangerous officer (*id*. at ¶ 30).

By June 2021, Plaintiff was still traveling to Germany to visit his then-boyfriend (*id*. at ¶ 31). Plaintiff was able to travel despite COVID restrictions based on an "exception" for unmarried partners (*id*.). When Collins learned of this exception, she told Plaintiff, "oh, there's always an exception for *you*" (*id*.). Plaintiff believes that the "you" to whom Collins was referring was the gay community and that the remark was intended to be derogatory (*id*. at ¶ 31). Plaintiff filed a complaint with Kuss against Collins because of her comments (*id*. at ¶ 32).

Plaintiff opted not to seek re-election to the Select Board in June 2021 (*id*. at ¶ 34). At the end of the month, the Select Board voted against both a three-year and a one-year

3

reappointment of Plaintiff as a patrolman for the Brimfield Police Department because of Miller's unsubstantiated allegations against him (*id*. at ¶¶ 35-36, 39-40). Despite a *de-facto* procedure whereby the Select Board traditionally voted on all the nominees for the Police Department as a group, as it had done for at least 18 years, the Select Board voted on each candidate individually (*id*. at ¶¶ 36, 43). Leaming, Collins, and Kelly all voted against Plaintiff's reappointment notwithstanding the opinion of Town Counsel that choosing not to reappoint him amounted to termination of his employment and could be seen as retaliatory (*id*. at ¶¶ 38, 41). Leaming told a citizen attendee at the meeting that the Select Board did not need cause to reject Plaintiff's reappointment (*id*. at ¶ 42). After Plaintiff was stripped of his position as a police officer, additional complaints were filed against him with the Select Board and placed into his personnel file, again without any notice being provided to him (*id*. at ¶¶ 49-50). Plaintiff requested a Special Hearing pertaining to the termination of his employment pursuant to the Town's by-laws, but one has never been held (*id*. at ¶ 53). Plaintiff has been unable to obtain other employment as a police officer since Brimfield declined to reappoint him (*id*. at ¶¶51-52).

Following the termination of Plaintiff's employment, Leaming has referred to Plaintiff as a "faggot" and "fudgepacker;" he has used the same pejorative language about Plaintiff's cousin, who is also gay (*id*. at ¶ 47). Collins, for her part, reached out to a Town citizen in her capacity as Board Chair and disparaged Plaintiff while urging the woman to sue Plaintiff for defamation (*id*. at ¶ 55). Collins also disparaged Plaintiff publicly in her place of business, the Apple Barn Café, going so far as to remove patrons who expressed support for Plaintiff from the premises (*id*. at ¶ 57).

Collins applied for a Harassment Prevention Order against Plaintiff pursuant to Mass. Gen. Laws ch. 258E based on three alleged instances where Plaintiff publicly "gave her the

4

middle finger" in September and October of 2023 (*id*. at ¶¶ 58-60). Chief Beaudry took the unprecedented step of escorting Collins to Palmer District Court to file her affidavit and seek the Harassment Prevention Order (*id*. at ¶¶ 61, 69). Plaintiff was served with the order on November 2, 2023, but the case was summarily dismissed on November 15, 2023, when the Palmer District Court determined that Plaintiff's behavior was protected by the First Amendment (*id*. at ¶¶ 58, 66). Before the dismissal, Collins emailed Plaintiff at his place of business, characterizing Plaintiff as a "corrupt and dangerous person," who has "harassed and stalked community members," and "should not be around the public never mind children" (*id*. at ¶ 64). Collins also brought the Harassment Prevention Order to the media's attention (*id*. at ¶ 72).

In addition to helping Collins with filing for the Harassment Prevention Order, Chief Beaudry reached out to Plaintiff's estranged uncle for an affidavit supporting an Extreme Risk Prevention Order ("ERPO") to restrict Plaintiff's access to firearms. Beaudry knew Plaintiff's estranged uncle had sexually assaulted Plaintiff as a minor (*id*. at ¶¶ 62-63). Plaintiff's License to Carry ("LTC") was suspended because of the ERPO, and Plaintiff had to surrender his firearms (*id*. at ¶ 67). According to Chief Beaudry, he reached out to Plaintiff's uncle on instructions from the Select Board and, even though the Harassment Prevention Order and ERPO have been dismissed, he has refused to reinstate Plaintiff's LTC, allegedly based on the wishes of the Board (*id*. at ¶¶ 68, 70).

B.  Procedural History

Plaintiff commenced this action in Massachusetts Superior Court – Hampden County on April 16, 2024 (Dkt. Nos. 1-2; 9 at 1, 4). On July 18, 2024, ninety-three days after filing his complaint, Plaintiff filed a request for six summonses along with a motion to extend service by thirty days, which the court granted the following day (Dkt. No. 9 at 4, 16-18). Plaintiff served

all Defendants save Leaming on August 20, 2024 (Dkt. No. 9 at 6-15).  Defendants filed a notice of removal to this court on September 5, 2024 (Dkt. No. 1).  Plaintiff did not effect service on Leaming until September 18, 2024 (Dkt. No. 27-1).

## II.     DISCUSSION

Defendants move for dismissal based on Plaintiff's failure to timely serve his complaint.  This is an issue with which this court is very familiar.  *See Crossetti v. Cargill, Inc.*, No. 3:18-cv-30002-KAR, 2018 WL 2770130, at *2 (D. Mass. June 8, 2018), *aff'd*, 924 F.3d 1 (1st Cir. 2019).  "'Before a court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied.'" *Luxottica Grp., S.p.A. v. Lee*, 552 F. Supp. 3d 98, 101 (D. Mass. 2021) (quoting *Cichocki v. Mass. Bay Cmty. Coll.*, 174 F. Supp. 3d 572, 575 (D. Mass. 2016)).  A court can dismiss a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5).  "Where … 'the sufficiency of process is challenged under Rule 12(b)(5), ... [the] plaintiff bears "the burden of proving proper service."'" *Cichocki*, 174 F. Supp. 3d at 575 (quoting *Aly v. Mohegan Council-Boy Scouts of Am.*, Civil Action No. 08-40099-FDS, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009)).  "'[S]tate law governs the service of process prior to removal to the district court." *Crossetti*, 2018 WL 2770130, at *2 (quoting *Osborne v. Sandoz Nutrition Corp.*, No. 95-1278, 1995 WL 597215, at *1 (1st Cir. Oct. 6, 1995) (per curiam) (unpublished)).  *See also* Fed. R. Civ. P. 81(c)(1) (providing that the Federal Rules of Civil Procedure apply to civil actions after removal from state court). Accordingly, this court must determine the sufficiency of service of process prior to removal according to the rules the state court would have applied.

Massachusetts Rule of Civil Procedure 4(j) requires that a plaintiff serve a summons and copy of the complaint upon a defendant within 90 days of filing and mandates dismissal without

prejudice for failure to meet the deadline absent a showing of "good cause." *Crossetti*, 2018 WL 2770130, at *2 (citing Mass. R. Civ. P. 4(j)). Plaintiff filed his complaint on April 16, 2024, giving him until July 15, 2024 to effect service. While Plaintiff missed this deadline, he filed a motion for a 30-day enlargement on July 18, 2024, which the Superior Court granted on July 19, 2024. The parties agree that the new deadline for service following the order granting the extension was August 18, 2024, which was a Sunday. Thus, pursuant to Mass. R. Civ. P. 6(a), August 18, 2024, would not be included, and the deadline would run until the end of the next day, August 19, 2024. There is no dispute that Plaintiff did not meet this deadline.

Plaintiff acknowledges that in these circumstances he must demonstrate "good cause" to justify the tardy service. "Good cause is 'a stringent standard requiring diligen[t]' albeit unsuccessful effort to complete service within the period prescribed by the rule." *Crossetti*, 924 F.3d at 3 (quoting *Comm'r of Rev. v. Carrigan*, 698 N.E.2d 23, 26 (Mass. App. Ct. 1998)). Here, counsel for Plaintiff failed to request summonses during the initial 90-day service period, let the 90 days expire before seeking an extension of the deadline, and then failed to request a further extension as the period was, once again, expiring. Thus, the lack of timely service appears to be owing to inadvertence of counsel, and "[h]alf-hearted efforts by and inadvertence of counsel do not constitute good cause." *Crossetti*, 2018 WL 2770130, at *4 (citing *Carrigan*, 698 N.E.2d at 27). Indeed, "'[t]he rule's "entire focus was to force plaintiffs' (more realistically their lawyers') diligence in order to preserve causes of action against limitation problems."'" *Id*. (quoting *Carrigan*, 698 N.E.2d at 26).

Plaintiff tries to pin the fault for untimely service on the Hampden County Sheriff, representing that he mailed out service to the Sheriff's Office on August 5, 2024, two weeks before the Sheriff completed service. Plaintiff offers no explanation for waiting over two weeks

7

following the granting of the extension to provide the Sheriff with the summonses and copies of the complaint.  Regardless, "the failure of [a] constable to complete service d[oes] not constitute 'good cause' for noncompliance with rule 4(j)." *Shuman v. The Stanley Works*, 571 N.E.2d 633, 635 (Mass. App. Ct. 1991) (citing *Braxton v. United States*, 817 F.2d 238, 242 (3d Cir. 1987)).

Plaintiff also incorrectly cites to *Carrigan* to argue that "th[e] rule is not meant to be strictly construed due to the liberal time extension allowances often granted" (Dkt. No. 19 at 2).  *Carrigan* says the exact opposite, explaining that the rule *is* meant to be strictly construed, but that "its execution is not unduly harsh due to the liberal extension of time allowances permitted under Rule 6(b).'"  *Carrigan*, 698 N.E.2d at 312 (citing *Burks v. Griffith*, 100 F.R.D. 491, 492 (N.D.N.Y. 1984).  Here, Plaintiff easily could have sought a second extension.  His failure to do so does not render the strict enforcement of the time limit for service "unduly harsh."

The court offers one final note in closing.  Defendants represent that if Plaintiff's claims are dismissed, it should be with prejudice insofar as the statute of limitations will have run.  The question of the statute of limitations is not currently before the court.  However, even if Defendants are correct, "the expiration of the statute of limitations, 'does not prevent the operation of rule 4(j)….'"  *Crossetti*, 2018 WL 2770130, at *4 (quoting *Hull v. Attleboro Savs. Bank*, 596 N.E.2d 358, 363 (Mass. App. Ct. 1992)).  "That said, Rule 4(j) provides for mandatory dismissal without prejudice and that is the relief the court will afford."  *Id.* at *5 (citing *Maniscalco v. Kenworthy*, No. 03-P-626, 2004 WL 2185422, at *3 (Mass. App. Ct. Sept. 28, 2004)).

### III.   CONCLUSION

For the above-stated reasons, Defendants' motion to dismiss (Dkt. No. 10) is GRANTED WITHOUT PREJUDICE.  The case may be closed on the court's docket.

It is so ordered.

Dated: July 11, 2025                                          /s/ Katherine A. Robertson
                                                              KATHERINE A. ROBERTSON
                                                              United States Magistrate Judge